## SUPREME COURT.

MILLARD P. FILLMORE as receiver of, &c., of CHARLES J. HUB-BARD, *appellant* agt. CORNELIUS M. HORTON, *respondent*.

A *receiver* appointed in *supplementary proceedings*, does not acquire the *legal title* to the property of the judgment debtor until his *appointment as such receiver*. His title does not relate back to the *time of the service of the restraining order* in these proceedings, upon the judgment debtor.

Where a creditor by a *bona fide chattel mortgage*, sells the property of the judgment debtor, upon the mortgage, and delivers possession to the purchaser, *prior* to the appointment of a receiver in supplementary proceedings of the debtor's property, such mortgage sale does not constitute a *conversion* of the property as against the receiver, for which, as such, he can maintain an action.

It is only when the party has possession or control of the property, that a refusal to deliver, on demand, constitutes evidence of a conversion.

*Erie General Term, November*, 1865.

*Present*, GROVER, *P. J.*, DANIELS *and* MARVIN, *Justices.*

ON March 10, 1863, Hubbard executed and delivered to the defendant a chattel mortgage on the property in question, as a present and continuing security for advances to be be thereafter made by the defendant.

In 1857, Absalom Bull recovered judgment against Hubbard, and July 7, 1863, commenced proceedings supplementary to the execution thereon, by the personal service of an order on Hubbard; which order contained a clause restraining and enjoining Hubbard from transferring or disposing of any of his property. During the pendency of these proceedings, and previous to the appointment of plaintiff as receiver of Hubbard's property, the defendant proceeded to sell the property on his mortgage, and purchased it himself, and resold it to Hubbard's wife. After plaintiff's appointment he demanded the return of the property, which was refused, and this action was brought for the conversion thereof. The action was tried before a referee, who reported that at the time of the sale by defendant his mortgage had not been paid, and dismissed the complaint, and plaintiff appealed. The legal question involved was, as to the time when the judgment creditor obtains a lien on the debtor's property by the proceedings supplementary to the execution.

GEO. W. COTHRAN, *for appellant.*

I. Upon recording the order appointing plaintiff receiver of Hubbard's property, he became vested with the property in question as of the time of the commencement of the proceeding in which he was appointed.

It is provided by section 298 of the Code, that the order appointing a receiver in supplementary proceedings, shall be recorded, and that the receiver "shall be vested with the property and effects of the judgment debtor from the time of the filing and recording the order."

The same section also provides that when the order requiring the debtor to appear and answer concerning his property is granted, "the judge may, by order, forbid a transfer or

other disposition of the property of the judgment debtor." That was done in this case.

Prior to the amendment of 1862, the receiver succeeded to the debtor's rights of property on filing his bond. The amendment simply provides for recording the order of appointment, and that the receiver shall become vested from that time. Requiring such orders to be recorded, was for the benefit of other creditors, to furnish record evidence of what proceedings had been taken against the debtor. The effect of the restraining clause is left untouched by the amendment.

What force and effect are to be given to that clause authorizing the judge to enjoin a debtor from making any disposition of his property? Although this question has been incidently before the courts, yet it has never, in any reported case, received that consideration to which its importance entitles it.

Unless the receiver, upon his appointment, and recording the order appointing him, becomes "vested" with all the property that the judgment debtor had *at the time of the service of the restraining order on him,* then the whole proceedings supplementary to the execution are a failure. To hold that the receiver simply becomes "vested" with what the debtor has *at the time of recording the order of appointment,* is to nullify the clause in question, and to permit debtor's to deal with their property as they choose, intermediate the service of the order and the appointment of the receiver.

The judgment creditor acquires a lien upon his debtor's property by the service of the order, which lien ripens into a perfect power of alienation, by the subsequent appointment of a receiver (*Edmonston* agt. *McLeod,* 16 *N. Y. R.* 543, 544).

In this case the court say, " by the commencement of the proceedings supplementary to execution against his judgment debtor, the plaintiff acquired an inchoate lien upon his interest, whatever that may have been, in the lot purchased of Woods. But to perfect this lien and secure the benefit of his proceedings, it was necessary that he should obtain

an order under the 297 section of the Code, directing the property of his debtor to be applied in satisfaction of his judgment, and also procure the appointment of a receiver to carry that order into effect. Such orders would have the effect to divest the debtor of his interest in the property, and *to vest it in the receiver* for the benefit of the plaintiff."

In this case it was unnecessary to have procured an order under § 297, because there were conflicting claims to the property, and that section relates solely to property which is undisputedly the debtor's. The case in the court of appeals properly came within § 297.

If the service of the order did not create any lien upon the debtor's property, what possible benefit could a creditor acquire by virtue of these proceedings? It certainly suspended the debtor's power of disposing of his property, and the property became subject to the power and authority of the court. The law *appropriated* this property to the payment of the judgment sought to be enforced. By this I mean to the extent of the debtor's interest. Third parties rights, of course, must be respected.

This being a proceeding in an action based upon a judgment of the court, and in aid of the legal execution, instituted for the purpose of enforcing the judgment, the service of the order in legal effect amounts to an equitable levy. The proceeding is only available where the legal execution is ineffectual. Its purpose and object are to reach and render applicable to the satisfaction of a judgment, rights of property and equitable interests, which are not subject to levy and sale on an execution. The levy of an execution creates a lien upon property. This proceeding being in effect an equitable execution, the service of the order creates a similar lien upon the debtor's equitable interests that the levy of an execution at law does upon property, and the rights thus acquired are lost by abandonment in the same manner.

If I am correct in my position that the creditor does thus acquire a specific lien upon the debtor's property, then the conclusion inevitably follows that the receiver, upon his

appointment, being the mere officer of the court to enforce the lien thus acquired, becomes vested with the property of the debtor as it was at the time this lien was acquired. He certainly could not become vested prior to his legal existence. The Code says, he shall become vested from the time of recording the order of his appointment. While this is true, there is nothing in that provision inconsitent with his then becoming vested, by operation of law, with all the debtor's rights of property that existed when the proceedings were commenced. How else shall this lien be enforced? The property of the debtor from that time having been in the custody of the court, the debtor having been restrained from disposing of it, does not the court place this property into the hands of its receiver just as it was when levied upon by the service of the order? The receiver's rights do relate back to that time. (2 *N. Y. Pr.* 106; *Rutter* agt. *Tallis*, 5 *Sandf.* 610; 3 *Bosw.* 550.)

There has been some criticism upon *Rutter* agt. *Tallis*, but without foundation, for the reason that the cases all arose under § 244 as to the appointment of receiver's as a provisional remedy. There is a wide difference between the levy of an equitable execution, based upon a judgment, and the notice of a motion for the appointment of a receiver in an action just instituted, while it is held that in the latter class of cases the receiver acquires no lien until his actual appointment as against *intervening judment creditors.* (*Rutter* agt. *Tallis* is cited with approval; *Van Alstine* agt. *Cook*, 25 *N. Y.* 489, 496.) In that case, intermediate the appointment of a receiver, and his actual acceptance of the trust and filing his bond, a judgment creditor caused an execution to be levied upon the partnership property, and the question was who should have the proceeds of the property—the receiver or the sheriff? The court held that, as against the execution creditor, who was proceeding in a legal manner, and who had acquired the first specific lien, he was first entitled to his pay. It will be observed that this exception is in behalf of an *execution creditor*, not in favor of a purchaser with notice of the pendency of the proceedings, nor a person

attempting to acquire title under an authority conferred by the restrained debtor, to wit, a defunct chattel mortgage.

The well settled rule in chancery was, "the receiver is, as between the parties to the suit, to be considered as appointed from the date of the order of reference to the master" (*Fairfield* agt. *Western*, 2 *Simons & Stuart Ch. R.* 96).

The order of reference in this case was dated July 7, 1863. Therefore, I insist, that as between the receiver and Hubbard, the receiver, on his appointment, succeeded to all Hubbard's rights of property as they existed when the order was served, which was July 7, 1863.

————— —————, *for the respondent.*

*By the court*, GROVER, J.   The plaintiff did not acquire the legal title to the property of Hubbard, the judgment debtor, until he was appointed receiver in the supplementary proceedings.   This has been so decided by the court of appeals in a case not yet reported.   The sale of the property by the defendant, upon the mortgage, was prior to that, as also his sale to Mrs. Hubbard.   These sales cannot, therefore, constitute a conversion of the property as against the plaintiff, for which, as such, he can maintain an action.

By the appointment of the plaintiff as receiver, not only the goods and chattels of the debtor vested in the plaintiff, but also his choses in action.   It follows that if the defendant had converted Hubbard's property prior to the appointment of the plaintiff, the right of action would have vested in the plaintiff, and he could have maintained an action therefor.

It would, perhaps, be a sufficient answer to any claim of the plaintiff founded upon this ground, that the plaintiff has not, in his complaint, counted upon any such cause of action. It is true, that if the sales upon the mortgage and by the defendant to Mrs. Hubbard, were mere shams, so as not to transfer any title to the property as between the parties, but leave it remaining in the defendant, then the refusal to deliver the property by the defendant to the plaintiff, upon

demand, after the appointment of the plaintiff as receiver, would be sufficient proof of a conversion of the plaintiff's property. But no evidence tending to show that the sale from the defendant to Mrs. Hubbard was not a valid one between the parties, was given. The defendant had not only sold the property, but delivered it to the purchaser, and completely divested himself of possession before the demand was made. Under this state of facts, the neglect or refusal of the defendant to deliver the property on demand, was no evidence of a conversion. It is only when a party has the possession or control of property that a refusal to deliver upon demand constitutes such evidence.

Whether the objection was taken upon the trial that the plaintiff could not recover for a conversion of the property while the title was in Hubbard, does not appear in the case. From the opinion of the learned referee, it appears that the right of the plaintiff to recover upon that ground was considered by him. The question whether there had been a conversion as against Hubbard, depended upon the question whether there was anything due upon the mortgage at the time of the sale of the personal property made by virtue of it by the defendant. This question has been fully discussed by the referee, and I think his conclusion thereon correct. This being so, there is no reason to reverse the judgment.

It should, therefore, be affirmed with costs.